H. R. MACFARLANE ET AL., ASSIGNEES OF THOMAS SPENCER, A BANKRUPT, *vs.* THOS. SPENCER, THOS. SPENCER, JR., ET AL.

#### ON APPEAL.

THE FACTS SHOW T. SPENCER insolvent on December 12, 1876. A deed then made of land to which he had an equitable title to the defendant T. S., Jr. ;

HELD, void as against the plaintiffs, assignees for all the creditors of T. S. who are prior and subsequent. Whereas here the debtor and grantor was insolvent when he made the grant, no principle of estoppel by consent could be applied to him. But the deed made September 29, 1877, to T. S., Jr., by the procurement of T. S. was *held* valid, because the facts presumptively show the money paid for it to be the money of T. S., Jr.

Opinion of the Chancellor appealed from.

Two bills in equity were filed by the petitioners. In the first one it is alleged that the petitioners are the lawfully appointed assignees in bankruptcy of Thomas Spencer of Hilo, Hawaii, who was adjudged a bankrupt on the 14th of February, 1881; that since about the year 1860 said Spencer has been engaged in the business of sugar planting in Hilo ; that from that date to the filing of the bill the real estate of said Spencer has been subject to various mortgages to the full value ; that he has also owed large amounts of unsecured debts, and that from 1870 he has been insolvent ; that on the 8th of November, 1865, Chas. N. Spencer, brother of said Thomas Spencer, purchased a tract of land called Waipunalei, situated in Hilo, Hawaii, for $350, and that the purchase was in fact made by Thomas Spencer and the consideration paid by him, but the deed taken in the name of Chas. N. Spencer so that the land might not be answerable for the debts of Thomas Spencer ; that Thomas Spencer has had possession and control of the land to the present time ; that in July, 1876, Thomas Spencer took out a royal patent for the land and paid the Government commutation thereon ; that Chas. N. Spencer gave to Thomas Spencer an irrevocable power of attorney, dated November 8, 1876, to lease, sell, mortgage or otherwise dispose of the premises, and also to possess and enjoy the same, and that by a secret and unrecorded deed dated the 12th of December, 1876, Thomas Spencer as the attorney of Chas. N. Spencer conveyed the said ahupuaa of Waipunalei for the consideration of $1 to Thomas Spencer, Jr., then aged about seven years; that in 1878 the said

Thomas Spencer as guardian of Thomas Spencer, Jr., made a lease of the said premises which is now held by R. R. Hind of Kohala, that so far as the legal title of this land was in Chas. N. Spencer, he held it as a trustee for Thomas Spencer, and so far as the legal title is now in Thomas Spencer, Jr., it is as trustee for Thomas Spencer; that at the time the deed was made to Thomas Spencer, Jr., Thomas Spencer was the owner of the land, that no valuable consideration was paid for it by Thomas Spencer, Jr.; that as Thomas Spencer was then and had been for a long time insolvent, the transaction was fraudulent as to his creditors and intended to conceal his own interest therein, and to put it in a condition so it could not be levied upon by his creditors.

The bill prays for a discovery of the titles and papers and of certain material facts; that Chas. N. Spencer and Thomas Spencer, Jr., may be decreed to hold the premises as trustees of Thomas Spencer, that the deed of December 12, 1876, to Thomas Spencer, Jr., may be declared void as to the creditors of Thomas Spencer, and that Chas. N. Spencer and Thomas Spencer, Jr., may be ordered to convey their title in the estate to the petitioners, etc., etc.

The second bill contains similar allegations as to the appointment of the plaintiffs, as assignees in bankruptcy of Thomas Spencer; that in September, 1877, Thomas Spencer purchased at auction of the Hawaiian Government a tract of land at Laupahoehoe for $1,110, containing 68 1-10 acres and caused the royal patent for same to be made in the name of Thomas Spencer, Jr.; that said Thomas Spencer was then and for a long time had been insolvent; that no consideration was paid by Thomas Spencer, Jr.; that the money paid for the land was Thomas Spencer's, and the conveyance taken in the name of Thomas Spencer, Jr., in order to defraud the creditors of Thomas Spencer.

The bill prays for the same relief, substantially, as the first bill. Thomas Spencer answers to the first bill in substance

HAWAIIAN REPORTS, 1882. 527

H. R. Macfarlane *et al.*, assignee, *v.* Thomas Spencer *et al*.

that he admits the allegations of his bankruptcy and the appointment of plaintiffs as assignees; but denies his insolvency since 1870, or that his estate has been from 1860 to the present encumbered with mortgages to the full value; admits that the land of Waipunalei was purchased with his own money and put in the name of Chas. N. Spencer, but not to evade the payment of his debts, but that his (Thomas Spencer's) wife might not have control of the land, and that at the date of the purchase (Nov. 8, 1865) he was not indebted to anyone, was amply able to pay his debts and was not insolvent; that an irrevocable power of attorney to sell and dispose of the land was given at the same time as the purchase by Chas. N. Spencer to him, but being lost, another one was given in November 8, 1876; admits his possession of the land, and that the payment of the Government commutation was made by money of Thomas Spencer, Jr.; admits the transfer of the land to Thomas Spencer, Jr., by C. N. Spencer, by Thomas Spencer, his attorney, and the execution of the lease as guardian; denies that Chas. N. Spencer was his trustee, or that Thomas Spencer, Jr., is his trustee, or that the conveyances are fraudulent as to his creditors, or were intended to conceal his own interest in the premises, or to put them beyond the reach of his creditors; produces the deeds asked for; and, among other specific replies to interrogatories, says that the amount of his property was in 1876 equal to his debts and 100 per cent. more, and that it was so the year before; that up to 1878 or 1879 his property has equalled the amount of his debts. That he first took possession of Waipunalei 12th of December, 1876; that Chas. N. Spencer never held the premises in trust for him; that Chas. N. Spencer never demanded an account of the rents and profits; that no money was paid to Chas. N. Spencer on account of Thomas Spencer, Jr., for the purchase of the land.

To the second bill Thomas Spencer answers that the purchase of the land at Laupahoehoe of the Government for

$1,110 was made with the money of T. Spencer, Jr., and admits that he was insolvent in 1877, and had been so for a long time before.

The two cases were tried together, and it was agreed that the evidence adduced is to be applied to one case or the other, as it may be applicable.

The first question at issue is whether Thomas Spencer was insolvent in 1870, 1876 or 1877.

I feel no doubt that he was insolvent. I have to prove this; first, his own sworn admission. From the records of this Court it appears that Thomas Spencer and his wife's trustees, under a deed of separation dated the 30th of December, 1864, presented to the Justice of the Supreme Court, an amicable submission for a reduction of the annual allowance agreed to be paid to Mrs. Spencer, the payment of which was made a charge upon Mr. Spencer's real estate. In his submission, which is sworn to July 9, 1874, Mr. Spencer declares that "by reason of ill success in business, the said Thomas Spencer is at present insolvent, being indebted in large sums of money, etc." The Court reduced the allowance from $3,000 to $1,500. I refer also to the admission of insolvency in the sworn answer to the second bill above alluded to; which if not done by mistake is strong evidence.

There is also in evidence the records of the Court by which it appears that on the petition of M. S. Grinbaum & Co., Thomas Spencer was on the 15th of January, 1875, adjudged a bankrupt. An arrangement having been effected the proceedings were discontinued the next day.

Mr. E. P. Adams testifies that he was assignee of Messrs. Walker & Allen in 1874, to whom Thomas Spencer owed a large sum of money for advances to carry on his plantation, and that his real estate was all mortgaged. He sold the unsecured claims against Spencer amounting to $55,000 for $1,000. It appears by records of this Court that Mr. Adams, on the 6th of August, 1874, filed a petition to have Mr.

H. R. Macfarlane *et al.*, assignee, *v.* Thomas Spencer *et al.*

Spencer declared a bankrupt, but before adjudication, the proceedings were discontinued. Mr. Adams says that if the contract labor could have been kept, the value of the plantation would have been augmented, and also a good manager would have made a great difference in the value of the property.

Mr. S. C. Allen testifies in substance that from his knowledge of Mr. Spencer's property derived from his business connection with him for from twelve to fifteen years, he is of the opinion that the amount of mortgages covered the full value of the property and that Mr. Spencer was not solvent. His affairs were growing worse constantly while he was agent. Mr. G. W. Macfarlane whose knowledge of Mr. Spencer's affairs dated from 1874 says, that the place was mortgaged for its full value in 1875 and 1876.

The mortgages filed in evidence are, one in favor of Walker & Allen, dated 29th April, 1870, for $20,000, and another dated the 1st of July, 1881, (which included the amount of $20,000), and which was finally foreclosed in 1880. The indebtedness of Thomas Spencer held by Dr. J. S. McGrew, secured and unsecured, was found by the Master in Chancery to be $153,048.18, but by an agreement between J. S. McGrew and T. Spencer, the former agreed to take $25,750 for his claim in certain contingencies, and this sum, interest on same and the advances by Green, Macfarlane & Co., in all amounting to $75,399.68, was the amount which the decree of foreclosure called for. The plantation sold for $60,000.

Although there is evidence that would well support the allegation in the bill that Spencer was insolvent in 1870, so far as the land of Waipunalei is concerned, it is unimportant; for it was not until 1876 that the land was transferred (as set forth in the bill, and as the papers filed substantiate) to Thomas Spencer, Jr. As appears by the answers of Chas. N. Spencer he never exercised ownership over this land, did not pay for it, received no rents from it, and did not consider it as his

67

property, and so it was not returned to his assignees (when insolvent in 1870), and that Thomas Spencer, Jr., (nor any one in his behalf) did not pay him anything as consideration for the transfer. I must treat this land up to December 12th, 1876, as the property of Thomas Spencer and subject to the claims of his creditors, and it follows, Thomas Spencer being insolvent at this date, that this transfer to Thomas Spencer, Jr., is not good as against his creditors, represented by the plaintiffs.

I consider now the purchase of the land called Hakoa, the particulars of which are given in the second bill. The royal patent is dated September 29th, 1877. G. W. Macfarlane says Spencer's position, financially, was a little worse in 1877 than in 1876; and I have no doubt he was then insolvent. He says he was insolvent then, in his answer to this bill. But Spencer says that he paid for this land $1,110 with money which he had in his keeping belonging to his ward; and that he took the money to his book-keeper (who is now dead), and received a plantation draft for the amount (drawn by himself). The plantation books would show this, if true, and they are not produced. I think the burden was on the respondent to produce them, if they bore out his statement.

The explanation of the way money was accumulated for this child is not satisfactory to me and the transaction is so colorable throughout that the most satisfactory proofs should have been adduced by respondent, considering Macfarlane's testimony on this point, and time was afforded him from May 3d to June 5th.

I feel obliged to find in favor of the plaintiffs in both bills, and a decree accordingly will be signed on presentation. I consider, however, that both of these matters could have been embraced in one bill, and award costs upon this assumption.

F. M. Hatch for plaintiffs.

A. S. Hartwell for respondent Thomss Spencer.

A. Francis Judd,

Chief Justice Supreme Court and Chancellor.

Honolulu, June 27, 1882.

H. R. Macfarlane *et al.*, assignee, *v.* Thomas Spencer *et al.*

OPINION OF THE FULL COURT BY AUSTIN, J.

H. R. Macfarlane *et al. vs.* Thomas Spencer, Thomas Spencer, Jr., Chas. N. Spencer and R. R. Hind; and H. R. Macfarlane *et al. vs.* Thomas Spencer and Thomas Spencer, Jr.

The above entitled cases were tried together by consent on the appeal to this Court taken from the decision of the Chancellor, setting aside as fraudulent and void as to creditors two deeds of land on the Island of Hawaii, executed to the defendant, Thomas Spencer, Jr., the one by the defendant Thomas Spencer, as attorney for Chas. N. Spencer, and the other by the Government by the procurement of said Thomas Spencer. The said deed from Chas. N. Spencer bears date of December 12, 1876, and is of 2,520 acres of land in the District of Hilo, known as the Ahupuaa of Waipunalei. The Chancellor finds that the said Thomas Spencer was then insolvent, and the real owner of the land conveyed; and that the deed was void as to creditors of Thomas Spencer. Upon this question and also as to the validity of the said deed from the Government to Thomas Spencer, Jr., new evidence was offered and secured before us, and we now come to examine the case upon all the evidence presented.

Upon the evidence before the Chancellor we think his finding that on December 12, 1876, the defendant, Thomas Spencer, was insolvent; and that the deed then made to his son, said Thomas Spencer, Jr., was void as to creditors of Thomas Spencer, was just; and upon duly considering the new evidence upon these points we do not think that finding should be overruled.

By the sworn answer of the defendant, Thomas Spencer, in the case relating to the said conveyance by the Government to the defendant, Thomas Spencer, Jr., the said Thomas Spencer avers that in September, 1877, when said Government deed was made, and long before that, he was insolvent. This is strong evidence against him. In terms it does not include December 12, 1876, but it would ordinarily be construed to do so.

It is conclusively shown that Thomas Spencer was insolvent in 1874, and from thence to May 31, 1875. Upon that day an unsecured debt of $55,000 against him was assigned to John S. McGrew for $1,000. This was kept on foot by John S. McGrew, but it is now stated by the witnesses Green and Walker before us, that they understood McGrew in the purchase was friendly to Spencer, and held it substantially for his benefit at the price he paid or at least at less than its face. Thereafter and on the 23d of December, 1876, and after the date of the deed now in question, Messrs. Green and Macfarlane before assuming the agency of the plantation of Thomas Spencer, required of Dr. McGrew an agreement to which Spencer was a nominal party, but which he did not execute, by which McGrew agreed with them in consideration in substance of their assuming such agency, and advancing money to carry on said plantation that he, McGrew, would postpone to any claims they might thereby have against said Thomas Spencer until May 1, 1880, all of his large indebtedness against Thomas Spencer, except the sum of $22,750. By this agreement Messrs. Green and Macfarlane stood better than Thomas Spencer, and better than all other creditors of his; but McGrew expressly retains his claims against Spencer, and we do not think that there is evidence sufficient to show that the debt of $55,000 or the large surplus besides that over $25,750 held by McGrew against Thomas Spencer were ever released or satisfied. The witnesses Green and Walker swear that they considered Thomas Spencer solvent in 1876, and Mr. Green says, if they had not so considered him they would not have gone on advancing to him thereafter, as they did, large sums of money to carry on his plantation, manifestly, their advances and their opinion as to his solvency were based upon the execution and delivery of the agreement of McGrew with them above referred to, and but for the agreement they would have considered Thomas Spencer insolvent. So when the deed of December 12, 1876, was executed both these wit-

nesses would have considered Thomas Spencer insolvent. But if the deed of December 12 had been executed at the same time, or after the said agreement of McGrew dated December 23, 1876, still the financial indebtedness of Thomas Spencer was not a penny less than it was on December 12, 1876, and we have no doubt that he was then and ever since had been insolvent, and that said deed, for that reason, was void as to his creditors and as to the plaintiffs in this suit. It may be true that in December, 1876, by the enhanced values of his plantation interest incident to the establishment of the Reciprocity Treaty on September 1, 1876, and on account of the great hopes thereby engendered, the defendant Thomas believed that he was solvent, but it was manifestly a mistake, and because of his insolvency the said deed to Thomas Spencer, Jr., was void as to the plaintiffs.

The plaintiffs represent all the creditors, and there are prior and subsequent creditors. Having arrived at the conclusion that the defendant Thomas Spencer, was insolvent when the conveyance attacked was made, it is unnecessary to consider the different legal positions of prior and subsequent creditors. No case can be found sustaining as against creditors, a conveyance, without a valuable consideration made by an insolvent debtor.

We have examined the case of Baker *vs.* Gilman in the 52 Barb., p. 23, referred to by the defendant's counsel, which holds that a creditor consenting to a conveyance by a debtor would be estopped from questioning it.

In that case the debt of the creditor was nearly all a subsequent debt, and at the time of the conveyance there was no other valid debt against the debtor. In a case where, as here, the grantor was insolvent when he made the grant, we think no principal of estoppel would apply to any creditor.

. As to the land called Hakoa conveyed September 29, 1877, by the procurement of Thomas Spencer to Thomas Spencer, Jr., it appears, as above stated, that Thomas Spencer was

then insolvent. It is claimed that the consideration therefore, of $1,110 was paid on behalf of Thomas Spencer, Jr., and out of his funds. New proofs are presented. The plantation books referred to by the Chancellor are produced. Thomas Spencer swears positively that the funds used in the purchase were those of Thomas Spencer, Jr., and no satisfactory proof showing otherwise is made.

As to the land of Hakoa, therefore, the decree of the Chancellor is reversed, and the remainder of the decree affirmed.

F. M. Hatch for plaintiffs.

A. S. Hartwell for defendants.

Honolulu, September 23, 1882.